In the Matter of the ESTATE OF Maude SCHOLZ a/k/a Virginia Scholz, Virginia Barnett Scholz, and C. Scholz, Deceased.

Virginia H. BARNETT,
Plaintiff-Appellant,

v.

William C. BARNETT, and Leonard W. Lewis and Jane P. Lewis,
Defendants-Respondents.

In the Matter of the ESTATE OF Maude SCHOLZ, a/k/a Virgnia Scholz, Virginia Barnett Scholz, and C. Scholz, Deceased.

Virginia H. BARNETT,
Plaintiff-Respondent,

v.

William C. BARNETT, Defendant,

and

Leonard W. Lewis and Jane P. Lewis,
Defendants-Appellants.

Nos. 41736, 41738 and 41747.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 17, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1981.

Application to Transfer Denied
June 8, 1981.

Robert A. Crowe, St. Louis, for appellant in No. 41747.

Robert H. Batts, Webster Groves, for Virginia H. Barnett.

William C. Barnett, pro se.

Joseph B. Dickerson, Jr., St. Louis, for respondents in Nos. 41738 & 41736.

SMITH, Judge.

Defendants Lewis appeal from a judgment in two equity cases rendered against them in the total amount of $32,000 plus interest from September 1, 1971. Plaintiff, as administratrix d. b. n. c. t. a. of the estate of Maude Scholz appeals from the failure of the trial court to order an accounting.

Some detailed recitation of the procedural aspects of the cases is required. The action was originally brought in the Circuit Court on December 2, 1971, against William C. Barnett and the Lewis'[1] by plaintiff as an individual. The petition was in two counts. Count One recited that plaintiff and defendant Barnett had been married, were now divorced and that pursuant to the terms of the decree defendant Barnett was indebted to plaintiff in the sum of "not less than $10,000" plus interest. William Barnett was alleged to be the son of Virginia Barnett Scholz who died on September 1, 1971, and her sole heir. It was then alleged that "until on or about September 3, 1971" Virginia Barnett Scholz owned certain residential property located in Webster Groves. On the latter date a deed was recorded conveying the interest of Mrs. Scholz in

that property to the defendants Leonard W. Lewis and Jane Lewis, his wife. It was further alleged that on August 26, 1971, these defendants executed a note for $10,-000 and a deed of trust securing it to a bank.[2] It was charged that the Lewis' gave no consideration to Mrs. Scholz for the conveyance and that at the time they were acting as straw parties for defendant Barnett. The prayer was as follows:

"Wherefore, plaintiff prays for an order finding and decreeing that defendant William C. Barnett remains indebted to her in an amount exceeding $10,000; that defendants Leonard W. Lewis and Jane P. Lewis, his wife have no real interest in the real estate described in Paragraph 7 of Count I above; that said property became the sole property of William C. Barnett upon the death of Virginia Barnett Scholz on or about September 1, 1971, and for such other and further orders as to the court shall seem meet, just and proper in the premises."

Count II incorporated all of the allegations of Count I and further alleged that on July 1, 1971, the date of the purported conveyance, Mrs. Scholz "was mentally incapable of performing any act or acts by which any interest in any real estate owned by her could be conveyed." The prayer for relief was identical to the prayer in Count I.

Defendants were represented by William C. Barnett, who appeared pro se and as attorney for the Lewis'. Their joint answer denied all allegations of both counts of the petition.

On April 4, 1974, a second case was commenced against basically the same defendants,[3] this time in the Probate Court, and was entitled "Petition to Determine Title to Property." In this petition plaintiff described herself "as a beneficiary in the purported last will" of Maude Scholz. It then

---

1. There were other parties but they were dismissed out of the case and there is no need to any further complicate this case by discussing them.

2. What property is covered by the deed of trust was not alleged.

3. This suit added William C. Barnett and Alvin L. Mayer as Executors of the estate of Maude Scholz.

recited the ownership by Maude Scholz of the Webster Groves property on her death, the fact of plaintiff's pending lawsuit, that the public administrator had been appointed administrator of Maude Scholz estate, that thereafter a "purported" will had been filed and that pursuant to the terms of that will William C. Barnett and Alvin L. Mayer were appointed executors d. b. n. on October 9, 1973. It then recited the filing on September 3, 1971, of the deed and deed of trust purportedly executed prior to the death of Maude Scholz. It was then alleged that certain personal property located in the "above described real estate was sold on behalf of defendant William C. Barnett" as his personal property. It was charged that no accounting of the sale of the real or personal property had been made despite demand by plaintiff and that these were assets of the estate. The prayer was as follows:

> "Wherefore, your petitioner prays for an order requiring defendants, or some of them, to account for the proceeds of the purported sale of the above-described real estate and of the personal property located thereon, for a certification of this cause to the Circuit Court of the County of St. Louis for trial[4] and for such other and further orders as to the Court may seem meet, just and proper in the premises."

Plaintiff filed a motion to consolidate the two cases which was denied. That order also sustains "Motion to dismiss Alvin Mayer and William Barnett Executors."[5]

Plaintiff then sought to strike the pleadings of defendants Barnett and Lewis on the basis of failure to answer with completeness interrogatories. This motion was granted and a default and inquiry was granted.

At the default hearing, plaintiff appeared. Her proof was sufficient to establish that the deed of July 1, 1971, was a forgery and that at the time Maude Scholz lacked the physical or mental capacity to execute the deed. Plaintiff's proof also was sufficient to establish that the will of March 1, 1970, was also a forgery and executed at a time that Mrs. Scholz lacked physical or mental capacity to execute a will.[6] During the course of the hearing evidence was presented that the real estate in question had been sold to a bona fide purchaser after the Lewis' acquired the property, if they did, and that this sale and a resulting escrow agreement had been approved and quit-claim deeds executed by all the parties, including the plaintiff. The escrow agreement provided for the proceeds to be held until resolution of this litigation and distributed in accordance "with final orders or settlement and determination in the above proceedings."

The default hearing concluded on May 12, 1977. After some delay, the court entered its "Statement of the Case, Findings, Order, Judgment and Decree."[7] That document reflects that the cases were consolidated for trial and the judgment does not separate out the relief granted on each case other than through a designation of recovery by plaintiff as an individual or as personal representative. Plaintiff sued in her individual capacity in both cases and as personal representative only in the second. The

---

4. Although the record contains no document so reflecting, this certification must have been granted, for all further proceedings were in Circuit Court.

5. The motion is not a part of the record so we do not know whether this was a motion to dismiss the executors as parties or to discharge them as executors. While the former would more logically meet the language of the order, the judgment entered by the court reflects plaintiff as administratrix d. b. n. c. t. a. of the Estate of Maude Scholz. Plaintiff testified that she filed the second suit in her "representative capacity after [she] had been appointed administrator." The record does not contain any appointment of plaintiff as administratrix nor does any pleading reflect that the second suit was filed by her as a representative of the estate.

6. No allegations attacking the will were ever pleaded unless the word "purported" meets that requirement.

7. There is some indication in the record that the delay was due to plaintiff's attorney's failure to provide the judge with requested findings and decree.

court found that both the will of March 1, 1970, and the deed of July 1, 1971, were forgeries and that, at the time of execution of each, decedent lacked the physical or mental capacity to execute the documents. We must presume this finding voids both documents. The judgment was as follows:

"Wherefore, it is ordered, adjudged and decreed by the Court that Virginia H. Barnett, individually, have and recover from William C. Barnett, Leonard W. Lewis and Jane P. Lewis, jointly and severally, the sum of $22,000, together with interest thereon at 6% per annum from and after September 1, 1971, and that Virginia H. Barnett, Administratrix Cum Testamento Annexo, De Bonis Non, have and recover from William C. Barnett, Leonard W. Lewis and Jane P. Lewis, jointly and severally, the sum of $10,000,[8] together with interest thereon at 6% per annum from and after September 1, 1971, and that defendants pay the costs herein incurred."

The Lewis' appealed from this judgment. Plaintiff, as administratrix appeals from the failure of the trial court to order an accounting of the personalty owned by the decedent at her death. The Lewis' challenge raises several issues but we do not deem it necessary to reach all issues raised as well as others inherent in the proceeding.[9]

■ Rather, it is apparent that the judgment as to the Lewis' runs afoul of the well-accepted rule that the relief granted upon default may not be "other or greater than that which he shall have demanded in the petition as originally filed and served on defendant . . ." Sec. 511.160, RSMo 1978; Rule 74.11; *Rook v. John F. Oliver Trucking Co.*, 505 S.W.2d 157 (Mo.App.1973). Here the only relief sought against defendants Lewis in the first suit filed was a declaration that they had no interest in the real estate. No money damages were sought (and as a matter of fact none were proved). The judgment granted relief "other" than that sought in the petition. The court could not, as plaintiff contends, simply substitute the value of the property for the property itself.[10] The petition in the first case did not seek, as it could not, that title to the real estate be vested in plaintiff. It sought only a declaration that defendants Lewis had no interest in the property. At the very most, plaintiff had a lien against the land, but a lien against land is not ownership and does not without more entitle the lienor to the proceeds of a sale of that land.[11] Plaintiff prayed for a declaration of non-interest and that is the most she could obtain in this default proceeding.

■ As to the second suit the same is true. Plaintiff sought an accounting, nothing more. The court did not order an accounting, if indeed it could, after declaring the will a forgery. Rather, it entered a judgment for money damages, a relief not sought. Additionally, the judgment entered finds no evidentiary support to uphold it as an accounting in fact as plaintiff argues.

---

8. The only evidence even remotely supporting the total damage award is the price achieved in the bona fide sale in August 1976—$32,100. Why the total of $32,000 was divided as it was is sheer conjecture.

9. For instance: (1) Does plaintiff as a judgment creditor of an heir have standing to challenge the deed? (2) Does plaintiff as administratrix have standing to contest the validity of the document under which she serves? (3) If so, does the declaration of forgery by the court terminate her standing to seek further relief such as an accounting? (4) Has plaintiff timely contested the will? (5) If so, can she contest it in a proceeding which also seeks other equitable relief such as an accounting? (6) Is the second action filed by plaintiff a proceeding to discover assets or something else? (7) If the former, is an accounting a proper remedy? (8) In either event what showing is required by plaintiff to obtain an accounting against the Lewis'? This listing of questions by no means exhausts the field in this case.

10. In fact it did not do so, for it apparently gave part of the value to plaintiff as an individual (creditor or beneficiary?) and part to the estate. The latter award, at least, had to be under the second case which did not seek a declaration of ownership.

11. If plaintiff has any right to the proceeds of the sale, her remedy here would appear to be a proceeding against the funds held in escrow as a judgment creditor of William Barnett.

From what we have heretofore said, it is apparent that plaintiff's appeal is without merit. She has failed to establish her standing to seek an accounting, that the Lewis' are proper parties to such an accounting, or what, if any, personal property is to be accounted for.[12]

The judgment against Leonard W. Lewis and Jane P. Lewis is reversed and the cause remanded for further proceedings in conformity to this opinion.

SATZ, P.J., and SIMON, J., concur.

---

12. We note in passing that her appeal based upon the argument that the court erred in failing to order an accounting is directly contrary to her contention on the Lewis appeal that the $10,000 judgment is in fact a judicial accounting.